16 Neb. App. 27
STATE OF NEBRASKA, APPELLEE,
v.
JONATHON MOORE, APPELLANT.
No. A-06-1001.
Court of Appeals of Nebraska.
October 16, 2007.
Joseph L. Howard, of Gallup & Schaefer, for appellant.
Jon Bruning, Attorney General, and George R. Love for appellee.
IRWIN, SIEVERS, and CASSEL, Judges.
IRWIN, Judge.

I. INTRODUCTION
Jonathon Moore appeals his convictions and sentences for first degree assault and use of a deadly weapon in the commission of a felony. Among Moore's assertions on appeal are that the district court erred in the jury instructions, that there was insufficient evidence to support the convictions, and that the sentences imposed were excessive. We find reversible error concerning the jury instructions, and reverse, and remand for a new trial.

II. BACKGROUND
On or about April 3, 2005, a group of people were "hanging out" near the "Spencer projects" in Omaha, Nebraska. Moore was present and was witnessed to possess a gun, which he placed in the trunk of his girlfriend's car. At some point, Moore's half brother Karnell Burton drove past the gathering. At least one witness observed Moore spit at Karnell's vehicle as it drove past. Somebody inside Karnell's vehicle then fired multiple shots into the air.
After shots were fired by somebody inside Karnell's vehicle, Moore and a friend, Deandre Primes, got into Moore's girlfriend's vehicle and drove to the residence where Karnell lived with his mother and his sister, Kenesha Burton. According to Primes, Moore was [u]pset" and Primes attempted to [t]alk him down, trying to calm him down." According to Primes, a vehicle similar to Karnell's was at the house and Moore commented that the car "look[ed] like [Karnell's] car." Moore stopped his vehicle in front of the house, pulled out his gun, which he had earlier been witnessed retrieving from the vehicle's trunk, and fired a single shot in the direction of the house.
Kenesha and Karnell's mother testified that at the time Moore shot at the house, she, Kenesha, and Kenesha's friend were watching a movie. Moore's shot passed through the wall of the house and struck Kenesha in the back. Kenesha suffered injuries to both of her lungs, her liver, and her spinal cord and spent 7 weeks in a hospital. She is permanently paralyzed and confined to a wheelchair as a result of the shooting.
On June 7, 2005, the State filed an information charging Moore with first degree assault and use of a deadly weapon in the commission of a felony. Trial was held in June 2006. The jury returned verdicts of guilty on both charges. On August 15, the court sentenced Moore.
At the jury instruction conference near the end of trial, Moore had objected to certain proposed jury instructions, including instruction No. 10. Instruction No. 10 provided as follows: "If you find that [Moore] intended to do wrong, but as a result of his actions an unintended wrong occurred as a natural and probable consequence, you must find that [Moore] is guilty even though the achieved wrong was unintended." Moore objected that the instruction was confusing and would mislead the jury. The State had requested a virtually identical instruction in its proposed jury instructions. In addition, Moore requested an instruction on the definition of "`recklessly," which the court refused to give.

III. ASSIGNMENTS OF ERROR
Moore has assigned five errors on appeal. First, Moore asserts that the district court erred in giving jury instruction No. 10. Second, Moore asserts that the court erred in refusing to give Moore's requested instruction defining "recklessly." Third, Moore asserts that the evidence was insufficient to sustain the convictions. Fourth, Moore asserts that the sentences imposed were excessive. Fifth, Moore asserts that there was "cumulative error" warranting reversal.

IV. ANALYSIS

1. JURY INSTRUCTIONS
Moore argues that the district court erred in overruling Moore's objection to jury instruction No. 10 and in giving that instruction, because the instruction "is misleading, confusing and an incorrect statement of law." Brief for appellant at 34-35. Moore also argues that the district court erred in failing to instruct the jury on the definition of "recklessly." We conclude that the instructions, when read together, were confusing or misleading on the facts of this case, and we find merit to these assignments of error.
[1-3] Whether jury instructions given by a trial court are correct is a question of law. State v. Fischer, 272 Neb. 963, 726 N.W.2d 176 (2007). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. Id. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. Id. To establish reversible error from a court's refusal to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. State v. Blair, 272 Neb. 951, 726 N.W.2d 185 (2007).
[4-6] Moore was charged with first degree assault. Pursuant to Neb. Rev. Stat. § 28-308 (Reissue 1995), a person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person. The requisite intent for first degree assault relates to the prohibited act, i.e., the assault, and not to the result achieved, i.e., the injury. State v. Williams, 243 Neb. 959, 503 N.W.2d 561 (1993). That is to say, first degree assault is a general intent, not a specific intent, crime. Id. The required mens rea set forth in the statute applies only to the course of action that brings about the actual assault. See State v. Cebuhar, 252 Neb. 796, 567 N.W.2d 129 (1997).
In the present case, Moore was charged with intentionally or knowingly causing serious bodily injury to Kenesha under a theory of transferred intent. The gravamen of the theory was that Moore intended to assault Karnell but instead assaulted Kenesha; the theory of transferred intent would allow Moore's intent to assault Karnell to "transfer" to the shooting of Kenesha. See State v. Owens, 257 Neb. 832, 601 N.W.2d 231 (1999). The district court instructed the jury on the theory of transferred intent in jury instruction No. 9, in which the court instructed the jury as follows:
If you find that [Moore] intended to assault a person other than Kenesha .. . and by mistake or accident assaulted Ken[e]sha . . . the element of intent is satisfied, even though [Moore] did not intend to assault Kenesha . ... In such a case, the law regards the intent as transferred from the original intended victim to the actual victim.
In instruction No. 10, the district court instructed the jury that if the jury found that Moore "intended to do wrong, but as a result of his actions an unintended wrong occurred as a natural and probable consequence," then the jury must find Moore guilty even though the achieved wrong was unintended. This instruction, when read in conjunction with instruction No. 9, appears to be an attempt to reflect the general intent nature of first degree assault and demonstrate to the jury that the issue related to Moore's intent was whether his action of firing the weapon at the house was done with the requisite intent and not whether he intended to injure the actual victim, Kenesha, or intended to cause the severity of injury that actually occurred, paralysis.
In State v. Leibhart, 266 Neb. 133, 662 N.W.2d 618 (2003), the Nebraska Supreme Court discussed the defendant's argument that there was insufficient evidence that she had intentionally or knowingly inflicted injury on her infant daughter through shaking. The court emphasized that first degree assault is a general intent crime and that the intent required relates to the assault, not the injury. The court clarified that the required intent in State v. Leibhart was an intent to shake the infant, not an intent to cause the specific injury that resulted.
Similarly, in the present case, the jury was instructed in the instructions, read as a whole, that the State did not have a burden to prove that Moore intended to assault Kenesha specifically or that Moore intended to cause the injuries suffered by Kenesha. Rather, the State had a burden to prove that Moore's actions resulted in serious bodily injury to Kenesha and that Moore acted "intentionally or knowingly." See § 28-308. The requisite intent in this case was Moore's intent to commit an assault. However, instruction No. 10, together with the court's failure to instruct the jury on the definition of "recklessly," was confusing and misleading to the jury on the issue of intent.
We find no merit to Moore's arguments on appeal that instruction No. 10 allowed the jury to find him guilty based upon any number of unspecified and incorrect "wrongs" including, among other things, consuming alcohol as a minor, driving while intoxicated, using foul language, having a child out of wedlock, associating with people who carry firearms, or spitting at his brother Karnell's car and causing animosity. Instruction No. 10 specifically required the unintended wrong of Kenesha's paralysis to occur "as a natural and probable consequence" of the intended wrong.
Nonetheless, the jury instructions, read as a whole, were confusing or misleading to the jury in this case on the issue of intent. The court instructed the jury that "intentionally" meant "willfully or purposely, as distinguished from accidentally or involuntarily." Because the court rejected Moore's requested instruction defining "recklessly," however, the jury was left with instructions that suggested that the only two mens reas possible were intentional on the one hand and accidental or involuntary on the other. Then, in instruction No. 10, the court instructed the jury to find Moore guilty if the jury found that he "intended to do wrong" but some unintended consequence occurred. Read as a whole, the instructions suggested to the jury that it had to find Moore guilty if it found that he intentionally shot at the house, as opposed to accidentally doing so, without regard to whether Moore intended to assault anyone. However, intentional and accidental were not the only possible mens reas.
A review of the record makes it apparent that Moore's defense at trial was that he had acted recklessly in firing at the house, but had not intended to assault Karnell, Kenesha, or anyone else. There was evidence in the record indicating that Moore fired a single shot at the house, that it was not clear whether the house was occupied when the shot was fired, and that it was not clear whether Karnell was at the house at the time. As such, there was evidence from which the jury could have concluded that Moore did not intend to assault anyone but fired a single shot at the house with disregard for the risks of doing soin other words, that he acted recklessly.
Moore's requested instruction was a correct statement of law and was supported by the evidence. We conclude that Moore was prejudiced from the court's failure to give the instruction, because the jury, as a result of instruction No. 10, was left with the impression that if Moore had not acted accidentally or involuntarily when firing a shot at the house, then he was guilty of first degree assault and culpable for the unanticipated injuries caused to the unexpected victim, Kenesha. This is true only if Moore had the general intent to commit an assault, rather than having acted recklessly. Because the jury was not informed that there was any other choice of mens rea besides intentional and accidental, the instructions as a whole were confusing and misleading.
We find merit to Moore's assignments of error concerning the jury instructions. Instruction No. 10 was confusing or misleading to the jury, especially because the court refused to instruct the jury on the definition of "recklessly." Read as a whole, the instructions in this case suggested to the jury that it was to find Moore guilty and culpable for the consequences of firing a shot at a house so long as it found that he did not accidentally do so. As such, we must reverse, and, because of our conclusion regarding the sufficiency of the evidence below, remand for a new trial.

2. SUFFICIENCY OF EVIDENCE
Next, Moore asserts that there was insufficient evidence to support his convictions. Moore argues that there was insufficient evidence to support a finding that he intentionally committed an assault and that as such, there was insufficient evidence to support the conviction for first degree assault and the corresponding conviction for use of a deadly weapon in the commission of a felony. We disagree.
[7] On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative value as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. State v. Grosshans, 270 Neb. 660, 707 N.W.2d 405 (2005).
[8,9] In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007). When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id.
In this case, the State presented evidence, as recounted above, to establish that Karnell drove past Moore, Moore spit in the direction of Karnell's vehicle, somebody in Karnell's car fired shots, and Moore responded by getting into Moore's girlfriend's vehicle, driving to Karnell's residence, observing and commenting on a vehicle looking like Karnell's at the residence, and firing a shot at the house. As a result of this action, Kenesha was shot in the back and is now paralyzed and confined to a wheelchair. The evidence was sufficient to support a rational trier of fact's conclusion that Moore intentionally or knowingly caused serious bodily injury to Kenesha, first degree assault, and did so with the use of a gun, use of a deadly weapon in the commission of a felony. This assignment of error is meritless. As such, the State is not prohibited from retrying Moore. See State v. Noll, 3 Neb. App. 410, 527 N.W.2d 644 (1995), overruled on other grounds, State v. Anderson, 258 Neb. 627, 605 N.W.2d 124 (2000).

3. EXCESSIVE SENTENCES
Next, Moore asserts that the sentences imposed were excessive. Moore argues that the district court abused its discretion in imposing consecutive sentences of 20 years' to 20 years' imprisonment on each conviction. In light of our resolution above of Moore's assignments of error concerning the jury instructions, we need not further address this assignment of error.

4. CUMULATIVE ERROR
Finally, Moore argues that there was "cumulative" error meriting reversal. Moore argues that "some of the errors [alleged] may not have been of sufficient importance if considered separately to warrant a reversal, but if considered together, they present a genuine question as to whether [Moore] received a fair trial." Brief for appellant at 48. Inasmuch as we have already found above that there is merit to Moore's allegations of error concerning the jury instructions, there is no need to further address this assignment of error.

V. CONCLUSION
We find that the jury instructions were confusing or misleading to the jury. We find, however, that there was sufficient evidence to support a finding of guilt. As a result, we reverse, and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.