751 N.W.2d 631 (2008)
276 Neb. 1
STATE of Nebraska, appellee,
v.
Jonathan MOORE, appellant.
No. S-06-1001.
Supreme Court of Nebraska.
July 3, 2008.
*632 Joseph L. Howard, of Gallup & Schaefer, Omaha, for appellant.
Jon Bruning, Attorney General, George R. Love, Columbus, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
In State v. Moore,[1] the Nebraska Court of Appeals reversed Jonathan Moore's conviction for first degree assault and use of a weapon to commit a felony, and remanded the cause for a new trial. The Court of Appeals held that the jury was misled by the trial court's failure to instruct the jury on the meaning of "recklessly." The court also found that the jury was misled by the giving of an instruction which stated that the jury "must find [Moore] guilty[,] even though the achieved wrong was unintended," if it found that he had "intended to do wrong, but as a result of his actions[,] an unintended wrong occurred as a natural and probable consequence." On further review, the State assigns as error the Court of Appeals' determination that the trial court should have defined "recklessly" for the jury. Although our reasoning differs from that of the Court of Appeals, we affirm its judgment.

BACKGROUND

SHOOTING
Kenesha Burton and her brother, Karnell Burton, have the same father as Moore, but not the same mother. The half siblings knew each other, saw each other frequently, and were generally on friendly terms. Sometime in late March 2005, however, Moore and Karnell had an argument over whom their father favored more. Karnell testified that he did not believe this argument was anything serious, and he never expected that any violence would result from the dispute.
The day of the shooting, April 3, 2005, a group of people, including Moore, his girlfriend, their infant child, and a friend, Deandre Primes, were outside "hanging out" near the "Spencer projects" in Omaha. Moore and Primes had been drinking. Karnell drove by the gathering in his black 1986 Chevrolet Monte Carlo, and an unfriendly exchange was had between Moore and Karnell. That exchange resulted in Moore's spitting in the direction of Karnell's car. Karnell kept driving, but when he reached the street corner, his passengers, who were apparently armed, fired several gunshots. There is some dispute about whether these shots were fired into *633 the air or toward the crowd, but no one was injured.
Karnell drove away, and soon thereafter, Moore left with Primes to go to a store. On the way, Moore first drove past the house where Karnell and Kenesha lived with their mother. Primes testified that there was no discussion between himself and Moore as to why Moore went there.
At the time that Moore drove by the house, Kenesha, her mother, and some friends were sitting inside watching a movie. Karnell was not there, and his car was not nearby. The mother's car, a black 2004 Monte Carlo, was parked in the driveway, and two other cars were parked on the street in front of the house. Nobody was standing outside. The evidence was in dispute as to whether light from the television or any other source inside the house was visible from the street. There is no indication that anyone was standing near a window or otherwise visible from outside the house.
Primes testified that he did not, in fact, believe there was anyone home. He did not see any lights on, or any other evidence that anyone was inside. But Primes testified, at one point, that he and Moore had observed a black Monte Carlo and discussed that it looked like Karnell's car.
Primes testified that he did not expect a shooting to occur. But, when they circled past the house for a second time, Moore suddenly pulled out his .44 Magnum revolver. According to Primes, Moore took no real "aim." With the gun pointing across Primes' face, Moore fired a single shot out the passenger window in the general direction of the house and drove away. That shot pierced the house and hit Kenesha as she sat inside on a stool, leaning against the wall. Kenesha was paralyzed as a result.

JURY INSTRUCTIONS
Moore was charged with assault in the first degree and use of a deadly weapon to commit a felony, and the case proceeded to a jury trial. At the instruction conference, the court denied Moore's request that the jury be instructed on assault in the third degree as a lesser-included offense. The court reasoned that there was no dispute that Kenesha had suffered a "serious bodily injury," as opposed to only the "bodily injury" referred to in the third degree assault statute. Failing to get an instruction on third degree assault, Moore asked that the court at least instruct the jury on the definition of "recklessly." Moore did not request any instruction that would describe recklessness as a defense to the crime for which he was charged. Neither did Moore object to instruction No. 7, which distinguished "`[i]ntentionally'" from "accidentally or involuntarily," but not from "recklessly." The court denied Moore's motion. The jury was not given the definition of "recklessly," and that term was not found in any of the instructions given.
Jury instruction No. 4 provided that in order to convict Moore of assault in the first degree, the State had to prove beyond a reasonable doubt that Moore did cause "serious bodily injury to Kenesha" and that Moore "caused said serious bodily injury . . . intentionally or knowingly." But, over Moore's objection, the court gave instruction No. 10 on natural and probable consequences: "If you find that [Moore] intended to do wrong, but as a result of his actions an unintended wrong occurred as a natural and probable consequence, you must find that [Moore] is guilty even though the achieved wrong was unintended."
The jury returned a general verdict finding Moore guilty of both first degree assault and use of a weapon to commit a felony. Moore was sentenced to two consecutive terms of 20 to 20 years' imprisonment, and he appealed.
*634 On appeal, Moore argued that the court erred in giving instruction No. 10 to the jury and in failing to instruct the jury on the definition of "recklessly." He did not dispute the failure to instruct the jury on third degree assault. The Court of Appeals agreed that the lack of a "recklessly" instruction and the giving of instruction No. 10 were erroneous decisions by the trial court. The Court of Appeals explained that the instructions, as given, suggested to the jury that it had to find Moore guilty if it found that he intentionally shot at the house, as opposed to accidentally doing so, without regard to whether Moore intended to assault anyone. In addition, the jury was not presented with "recklessly" as a possible mens rea and would not have understood that if it found that Moore had shot into the house with a reckless disregard for the risk of an assault occurring, then Moore would lack the intent necessary for assault in the first degree.
We granted the State's petition for further review of the Court of Appeals' decision.

ASSIGNMENT OF ERROR
The State assigns on further review that the Court of Appeals erroneously concluded that the trial court had committed prejudicial error by not instructing the jury on Moore's requested definition of "recklessly."

STANDARD OF REVIEW
[1,2] Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court.[2] Regarding a question of law, the Nebraska Supreme Court reaches a conclusion independent of the determination reached by the Court of Appeals.[3]

ANALYSIS
[3] The State's assignment of error narrowly focuses on the issue of whether the Court of Appeals erred in concluding that the trial court committed error in failing to define "recklessly" for the jury. The State did not assign as error the Court of Appeals' holding that instruction No. 10 was likewise confusing and misleading to the jury. Although the State argued during oral argument that the trial court did not err in giving instruction No. 10, absent plain error, our review on a petition for further review is restricted to matters assigned and argued in the briefs.[4]
[4, 5] We find no plain error in the Court of Appeals' conclusion regarding instruction No. 10.[5] We therefore limit our review in the present case to whether the Court of Appeals erred in concluding that the lack of a "recklessly" instruction was erroneous and prejudicial. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[6] *635 While the definition was a correct one, we agree with the State that a definition of "recklessly" was unwarranted and that the failure to define "recklessly" for the jury was not prejudicial to Moore.
Moore was charged with first degree assault under Neb.Rev.Stat. § 28-308(1) (Reissue 1995), which states, "A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person." Nowhere in that statute, or in the instruction given to the jury on the crime charged, is the term "recklessly" used.
Nor was the concept of "recklessly" implicated by any of the remaining instructions. We recognize that the theory of Moore's defense was that he acted with reckless disregard as to whether an assault would occur. But without an instruction explaining this theory of defense, the bald definition of "recklessly" has no context. On appeal, Moore does not argue that any other instruction should have been given. In fact, had Moore's requested instruction on "recklessly" been given as requested by Moore, there would have been a danger that the jury would have inferred that "recklessly" was a sufficient mens rea for the crime with which Moore was actually charged.
In short, Moore's proposed instruction on "recklessly" was unrelated to the legal issues presented in the case, and would have been confusing to the jury. Moore was not prejudiced by its rejection, and the trial court did not err in refusing to give it. The Court of Appeals erred in concluding that it should have been given.

CONCLUSION
[6] The State's assignment of error in its petition for further review has merit. Nevertheless, upon further review from a judgment of the Court of Appeals, this court will not reverse a judgment which it deems to be correct simply because its reasoning differs from that employed by the Court of Appeals.[7] The Court of Appeals also reversed Moore's conviction because of its conclusion that the trial court had erred in giving the jury instruction No. 10a decision that is not challenged by the current petition. The judgment of the Court of Appeals, reversing Moore's conviction and remanding the cause for a new trial, is therefore affirmed.
AFFIRMED.
NOTES
[1] State v. Moore, 16 Neb.App. 27, 740 N.W.2d 52 (2007).
[2] State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007).
[3] Liming v. Liming, 272 Neb. 534, 723 N.W.2d 89 (2006).
[4] State v. Rieger, 270 Neb. 904, 708 N.W.2d 630 (2006).
[5] See, generally, Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(f) (2d ed.2003).
[6] State v. Hessler, 274 Neb. 478, 741 N.W.2d 406 (2007).
[7] Mumin v. Dees, 266 Neb. 201, 663 N.W.2d 125 (2003)