762 N.W.2d 595 (2009)
277 Neb. 412
STATE of Nebraska, appellee,
v.
James R. PISCHEL, appellant.
No. S-08-359.
Supreme Court of Nebraska.
March 20, 2009.
*599 Dennis R. Keefe, Lancaster County Public Defender, and Matthew G. Graff for appellant.
Jon Bruning, Attorney General, and George R. Love for appellee.
HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
James R. Pischel appeals his conviction for use of a computer to entice a child or a peace officer believed to be a child for sexual purposes, a violation of Neb.Rev. Stat. § 28-320.02 (Reissue 2008). Pischel asserts generally that there was insufficient evidence to support his conviction. Pischel specifically asserts that the district court for Lancaster County erred in overruling his motion to suppress evidence seized as a result of a warrantless search of his vehicle, refusing to instruct the jury on entrapment, and allowing the jury access to certain exhibits during deliberations. We affirm.

STATEMENT OF FACTS
Edward Sexton, an officer with the Lincoln Police Department, was assigned as an investigator in the technical investigations unit. As part of his investigative duties, Sexton would go into online chat rooms posing as a person under the age of 16. In February 2007, Sexton created a fictional profile with the screen name "ljb92." The profile for "ljb92" indicated that the user was a female located in Lincoln. The "Age" section of the profile was left blank, but in a miscellaneous section of the profile, it was stated that "92 is the year i was born."
Sexton testified that as "ljb92," on March 7, 2007, he had an online communication in a Nebraska chat room with a person using the screen name "lincolnpietaster." During the March 7 conversation, Sexton stated that "ljb92" was a 15-year-old female and "lincolnpietaster" responded by stating that "ljb92" was too young for him. Sexton testified at trial that after "lincolnpietaster" stated on March 7 that "ljb92" was too young for him. Sexton as "ljb92" responded, "Whatever." The conversation ended.
On June 1, 2007, Sexton was online under the "ljb92" screen name when he was contacted via instant messaging by a person using the screen name "lincolnpietaster." Sexton believed that the screen name contained a sexual innuendo referring to oral sex. Pischel admitted at trial that he had communicated with "ljb92" using the screen name "lincolnpietaster" and that the name had a sexual innuendo that indicated he would like to perform oral sex on a woman.
The June 1, 2007, instant messaging conversation between Sexton as "ljb92" and Pischel as "lincolnpietaster" lasted approximately 3 hours, from shortly after noon until shortly before 3 p.m. While we would have preferred to paraphrase certain portions of such communications, the text of the communications is critical to the crime charged and to our analysis, and we therefore recite herein the actual words used by the parties to the communications, including grammatical errors.
*600 Early in the conversation, "ljb92" sent a message asking, "asl?" which Sexton testified meant a request for the other person's age, sex, and location. Pischel identified himself as being "25 m," meaning a 25-year-old male. Sexton as "ljb92" responded with "15 f," indicating a 15-year-old female. Pischel asked "ljb92" for a picture, to which "ljb92" responded "u first." Pischel sent a picture of himself to "ljb92." Sexton sent Pischel pictures of a female officer from when she was 15 years old or younger.
The first part of the conversation involved general topics, but eventually Pischel asked "ljb92" whether she had any plans for the day and what she would like to do. Pischel told "ljb92" to "let me know if your ever looking for some fun" and "i'm always looking for pussy to eat." Sexton as "ljb92" responded "u really offering?" and Pischel responded "yeah, as long as your not a cop trying to bust me for sex with a minor." Sexton as "ljb92" denied being a police officer, and the conversation continued in this vein, with Pischel later stating, "but yeah if you want your pussy eaten, or more i'm offering" and "oh I'm cool if thats all you want ... but i'll do anything else you want me to." Pischel asked "ljb92" "do you want to have sex, or do you want to give me oral, or do you just want to jack me off"; "ljb92" responded "how bout first 2."
Pischel then asked "so would you like me to come over?" and "ljb92" responded "not here," but asked whether he had a place to meet. Pischel proposed meeting at a restaurant; "ljb92" instead proposed meeting at Tierra Park near 27th Street and Highway 2. Pischel told "ljb92" that he would be driving "a green ford contour." The two made tentative plans to meet that day, but Pischel later decided it would not work and said that another day might work better. The two exchanged telephone numbers; Sexton as "ljb92" gave Pischel a number that belonged to the Lincoln Police Department. After Pischel determined that a meeting would not work on June 1, 2007, Sexton as "ljb92" told Pischel "i'm kinna let down," "feel like i been stood up," and "i close to being pissed" and sent Pischel an emoticon expressing anger. We note that in U.S. v. Cochran, 534 F.3d 631, 632 n. 1 (7th Cir. 2008), the court quoted a dictionary definition of "`emoticon'" as being "`a group of keyboard characters ... that typically represents a facial expression or suggests an attitude or emotion and that is used especially in computerized communications (as e-mail).'" The conversation, continued for some time with graphic sexual talk, and during the conversation, Pischel told "ljb92" that his name was "James" and that he lived near 14th Street and Old Cheney Road. The two eventually ended the conversation by making plans for another online chat the next Monday, June 4.
At approximately 9:40 a.m. on June 4, 2007, "lincolnpietaster" initiated an instant messaging conversation with "ljb92." The conversation began with general topics but after 20 minutes, Pischel as "lincolnpietaster" said "maybe you should invite me over to eat you." Sexton as "ljb92" agreed that they could meet at the park they had discussed in the earlier conversation. Pischel stated he could meet "ljb92" at the park in 10 minutes and would be in a green car. Pischel ended the conversation at approximately 10:40 a.m., stating "see you soon."
During the June 4, 2007, conversation, Sexton realized a meeting was being set up and began making arrangements to have officers at Tierra Park. Between the June 1 and 4 conversations, Sexton and fellow investigators had discovered information about Pischel. Using the telephone number and other information Pischel gave in *601 the June 1 conversation, investigators determined where Pischel lived. Investigators identified Pischel by comparing the picture he sent to "ljb92" to his driver's license photograph obtained from the Department of Motor Vehicles. Investigators also matched the description Pischel gave of his car to motor vehicle records for a car owned by Pischel.
An officer was observing Pischel's residence on the morning of June 4, 2007, and at approximately 10:45 a.m., the officer informed investigators stationed near Tierra Park that Pischel had left his residence and was headed toward the park. Officers observed Pischel's vehicle arrive and briefly park on a street adjacent to Tierra Park. Pischel began to drive away from the park but then turned back toward the park. Investigators asked an officer in a marked police cruiser to make a traffic stop of Pischel's vehicle. After stopping the vehicle, officers removed Pischel from the vehicle, arrested him, placed him in handcuffs, and placed him in the back of the police cruiser. Officers conducted a search of Pischel's vehicle and found two condoms in the console between the driver's seat and the passenger seat.
Sexton arrived at the scene after the officers had begun searching Pischel's vehicle. Pischel consented to a search of his home, and Sexton conducted the search. Sexton found a computer in the home and brought it to the police department for a search, which uncovered copies of the photographs that "ljb92" had sent to "lincolnpietaster" and information which indicated that the photograph files had been created on June 1, 2007, and accessed on June 4. The search also revealed a copy of the profile Sexton had created for "ljb92" and a copy of the photograph that Pischel had sent to "ljb92."
On July 9, 2007, the State charged Pischel with a violation of § 28-320.02. Prior to trial, Pischel moved to suppress the evidence obtained in the June 4 search of his vehicle. At the suppression hearing, Sandra Myers, an officer with the technical investigations unit, testified regarding the investigation that led up to the stakeout of Tierra Park and Pischel's arrest. Myers testified regarding Sexton's online conversations with Pischel and the investigation which identified Pischel as the person using the screen name "lincolnpietaster." Myers testified that investigators discovered that Pischel had an outstanding arrest warrant on a misdemeanor theft charge.
Michael J. Schmidt, the uniformed officer who stopped Pischel's vehicle, testified at the suppression hearing that he did so at the direction of Myers and that when he stopped the vehicle, he told Pischel he was under arrest pursuant to an outstanding warrant. Schmidt searched Pischel and found nothing of concern. Corey L. Weinmaster, one of the officers who searched Pischel's vehicle, testified that after Schmidt arrested Pischel and took Pischel to his cruiser, Weinmaster and another officer approached Pischel's vehicle to ensure no one else was inside. They then searched the passenger compartment of the vehicle and containers inside the passenger compartment, including a center console between the driver's seat and passenger seat. In the console, they found two wrapped condoms. The officers seized the condoms but did not seize any other evidence from the vehicle. Weinmaster testified that he did not have a search warrant for the vehicle. Following the suppression hearing, the court overruled Pischel's motion. At trial, over Pischel's objection, the court admitted into evidence the condoms found in the search.
At trial, the court admitted into evidence printed transcripts of the two online conversations between "ljb92" and "lincolnpietaster" that occurred on June 1 and 4, *602 2007. Over Pischel's objection, the court allowed the jury access to the transcripts during deliberations. The court reasoned that the transcripts were not testimony but instead were evidence of the crime itself.
Pischel testified in his own defense. He admitted that he took part in the online chats with "ljb92" and that "ljb92" claimed to be a 15-year-old female; however, he testified that he did not believe that "ljb92" was under 16 years of age, because of various things the two had discussed and because the June 1, 2007, chat took place at a time when a 15-year-old would have been in school. Pischel testified that he thought "ljb92" was a woman in her late teens or early twenties who was merely interested in role-playing as a 15-year-old and that he did not question her age because he did not want "to break that roleplay and risk not talking to her again."
Pischel testified that during the chats, he had lied about his own age, saying he was 25 when he was actually 30. Pischel testified that he was not interested in having sexual relations with a girl under 18 and that he had no interest in child pornography. He stated that he went to the park on June 4, 2007, hoping to meet a woman over the age of 18.
On cross-examination, Pischel admitted that he initiated the online conversations with "ljb92" on June 1 and 4, 2007; that he initiated the discussions of sexual behavior; that when he wrote to "ljb92" stating, "`I'm always looking for pussy to eat,'" it was not in response to any solicitation for sex on the part of "ljb92"; and that his intent in arranging times and places with "ljb92" was to meet "ljb92" and to engage in the sexual acts he had offered.
Pischel requested an instruction on the affirmative defense of entrapment. The court concluded that there was "not more than a scintilla of evidence" to support the instruction and refused the instruction.
The jury found Pischel guilty of violating § 28-320.02. The district court thereafter sentenced Pischel to imprisonment for 1 to 2 years.
Pischel appeals his conviction.

ASSIGNMENTS OF ERROR
Pischel asserts that there was not sufficient evidence to support his conviction. Pischel also asserts that the district court erred in (1) overruling his motion to suppress evidence obtained in the search of his vehicle, (2) refusing his requested instruction on entrapment, and (3) allowing the jury access to the written transcripts of online conversations during deliberations.

STANDARDS OF REVIEW
[1, 2] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008). An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact. Id.
[3, 4] In reviewing a trial court's ruling on a motion to suppress based on the Fourth Amendment, we will uphold its findings of fact unless they are clearly erroneous. State v. Draganescu, 276 Neb. 448, 755 N.W.2d 57 (2008). But we review de novo the trial court's ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search. Id.
*603 [5] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law. (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. State v. Moore, 276 Neb. 1, 751 N.W.2d 631 (2008).

ANALYSIS

The Evidence Was Sufficient to Support Pischel's Conviction.
[6] Pischel was charged under § 28-320.02 which provides:
No person shall knowingly solicit, coax, entice, or lure (a) a child sixteen years of age or younger or (b) a peace officer who is believed by such person to be a child sixteen years of age or younger, by means of a computer ... to engage in an act which would be in violation of section 28-319 ....
Under Neb.Rev.Stat. § 28-319 (Reissue 2008), "Any person who subjects another person to sexual penetration ... when the actor is nineteen years of age or older and the victim is ... less than sixteen years of age is guilty of sexual assault in the first degree." Neb.Rev.Stat. § 28-318(6) (Reissue 2008) defines "[s]exual penetration" to include "sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body ... into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes."
Pischel asserts that there was not sufficient evidence to support his conviction for use of a computer to entice a child for sexual purposes or, more specifically in this case, to entice a peace officer who is believed by the defendant to be a child 16 years of age or younger. We conclude that the evidence was sufficient to support the conviction.
The main pieces of evidence supporting Pischel's conviction were the transcripts of the online conversations between Pischel and Sexton posing as "ljb92." Such transcripts provided evidence that Pischel used a computer to communicate with a person using the screen name "ljb92," who Pischel was told was a 15-year-old girl. The transcripts further showed that Pischel offered to perform cunnilingus on "ljb92," asked whether "ljb92" wanted to have sexual intercourse with him and perform fellatio on him, suggested that the two meet to engage in such activities, and made arrangements to meet with "ljb92." In order to prove that Pischel was the person using the screen name "lincolnpietaster" to communicate with "ljb92," the State presented evidence that Pischel arrived at the time and location arranged for a meeting between "lincolnpietaster" and "ljb92." In addition to the evidence presented by the State, in his testimony offered in his defense, Pischel admitted that he took part in online conversations with "ljb92" using the screen name "lincolnpietaster," that he initiated such conversations, and that he initiated discussions of sexual behavior.
Such evidence was sufficient to support a conviction under § 28-320.02. From such evidence the jury, as a rational trier of facts, could have found that Pischel used a computer to communicate with a police officer posing as a child 16 years of age or younger and that during such conversation Pischel solicited, coaxed, enticed, or lured such person to engage in acts of cunnilingus, fellatio, and sexual intercourse and that such acts, when performed with a person less than 16 years of age, would have been in violation of § 28-319. In addition, as discussed below, the jury could *604 rationally have found that Pischel believed that the person with whom he communicated was a child 16 years of age or younger.
Section 28-320.02, of which Pischel stands convicted, requires, inter alia, that when the individual with whom he or she is corresponding is a peace officer, the defendant believe that the individual with whom he or she is corresponding is a child 16 years of age or younger. Pischel argues that the evidence was insufficient to establish that he actually believed that "ljb92" was a 15-year-old girl. In this regard, he refers us to his testimony at trial that he did not believe "ljb92" was really a 15-year-old girl and that instead, he believed that "ljb92" was an adult woman who was role-playing as a 15-year-old. He also refers us to the online conversations where he points out that although he was offering to have sexual relations with "ljb92," he also indicated he did not want to meet if "ljb92" was "a cop trying to bust me for sex with a minor."
In contrast, the State notes that there was evidence that during the conversations, "ljb92" stated that "she" was 15 years old, that "ljb92" sent Pischel a picture of a girl who was 15 years old or younger and told Pischel that it was a picture of "ljb92," and that Pischel's computer contained the profile created for "ljb92" which indicated that "ljb92" was born in 1992. It is for the jury to assess the credibility of witnesses, see State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008), and the evidence noted by the State was sufficient to give the jury a basis to find that, contrary to Pischel's testimony, Pischel actually believed that "ljb92" was a child 16 years of age or younger.
The evidence in this case was sufficient for the jury to find Pischel guilty of violating § 28-320.02. We therefore reject Pischel's first assignment of error.

Whether or Not the Court Erred in Overruling the Motion to Suppress, the Admission of the Evidence Found in the Search Was Harmless Error.
[7] Pischel next asserts that the court erred in overruling his motion to suppress evidence obtained in the search of his vehicle and in admitting such evidence at trial. We conclude that the guilty verdict in this case was surely unattributable to evidence obtained in the search and that, therefore, any error with regard to the admission of such evidence was harmless error.
[8] In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error. State v. Poe, 276 Neb. 258, 754 N.W.2d 393 (2008).
Pischel's motion to suppress related to the search of his vehicle. The only pieces of evidence obtained from the search and admitted into evidence were two condoms found in the center console. As we concluded above, there was sufficient evidence to support Pischel's conviction. The crime with which Pischel was charged was soliciting, enticing, coaxing, or luring "ljb92" to engage in sexual activity. The crime occurred during the online conversations between Pischel and "ljb92" and was completed before Pischel arrived for the meeting in the park. The evidence showing that Pischel brought condoms to the meeting was not necessary to support a conviction and was of minor interest to the computer-based crime charged. The verdict in this case was surely unattributable to such evidence.
Because the verdict was surely unattributable to evidence obtained from the *605 search of Pischel's vehicle, any error in the admission of such evidence was harmless error and would not support a reversal of Pischel's conviction. We therefore reject this assignment of error.

There Was No Evidence to Support an Instruction on Entrapment.
[9] Pischel next asserts that the district court erred by refusing his requested instruction on entrapment. We conclude that there was no evidence to raise the defense and that therefore, the court did not err in refusing the instruction.
[10-14] When a defendant raises the defense of entrapment, the trial court must determine, as a matter of law, whether the defendant has presented sufficient evidence to warrant a jury instruction on entrapment. State v. Byrd, 231 Neb. 231, 435 N.W.2d 898 (1989). In Nebraska, entrapment is an affirmative defense consisting of two elements: (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense. State v. Canaday, 263 Neb. 566, 641 N.W.2d 13 (2002). The burden of going forward with evidence of government inducement is on the defendant. Id. In assessing whether the defendant has satisfied this burden, the initial duty of the court is to determine whether there is sufficient evidence that the government has induced the defendant to commit a crime. Id. This determination is made as a matter of law, and the defendant's evidence of inducement need be only more than a scintilla to satisfy his or her initial burden. Id. A defendant need not present evidence of entrapment; he or she can point to such evidence in the government's case in chief or extract it from the cross-examination of the government's witnesses. Id.
[15, 16] In determining whether the court in this case erred in refusing the entrapment instruction, we must review whether Pischel satisfied his initial burden of demonstrating that there was more than a scintilla of evidence of inducement. Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promise of reward, or pleas based on need, sympathy, or friendship. Id. Inducement requires something more than that a government agent or informant suggested the crime and provided the occasion for it. Id. Inducement consists of an opportunity plus something else, such as excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, noncriminal type of motive. Id.
In prior cases, we have found sufficient evidence of inducement when the State went beyond simply providing the defendant with an opportunity to violate the law. In both State v. Canaday, supra, and State v. Heitman, 262 Neb. 185, 629 N.W.2d 542 (2001), the defendant was convicted of conspiracy to commit first degree sexual assault on a child. In both Canaday and Heitman, the defendant demonstrated more than a scintilla of evidence of inducement. In Canaday, we noted evidence that the defendant initially responded to advertisements that State agents, posing as a fictitious mother, had placed in an adult magazine seeking a "`man who likes kids and understands needs.'" 263 Neb. at 568, 641 N.W.2d at 17. We noted further evidence that State agents made the initial references to children and to "`special education'" of such children regarding sexual matters, that State agents repeatedly reinforced the fictitious mother's eagerness for the defendant to become *606 involved with her children, and that the State agents played on the defendant's emotions and desires. Id. at 569, 641 N.W.2d at 18. In Heitman, the defendant initiated contact with a 14-year-old girl by giving her, inter alia, a sexually suggestive letter and his e-mail address. Thereafter, police, posing as the girl, initiated a correspondence with the defendant and sent the defendant "numerous e-mail messages aimed at affecting his emotions and desires." 262 Neb. at 200, 629 N.W.2d at 555. In the messages, police indicated that the girl wanted the defendant "to be her sexual teacher," id., and encouraged him to write descriptions of how he would engage in sexual activity with her. We noted that "[o]f most importance" was evidence it was the police posing as the girl "who first suggested meeting at the motel" and who "created a sense of urgency for the meeting to occur." 262 Neb. at 201, 629 N.W.2d at 555. We determined in Heitman that "the State went beyond merely providing an opportunity to commit the crime, but instead encouraged [the defendant] to respond to [the] e-mail messages in a sexual manner and urged him to continue to think of [the girl] sexually." Id.
The sort of evidence of inducement that was present in State v. Canaday, 263 Neb. 566, 641 N.W.2d 13 (2002), and State v. Heitman, supra, was not present in this case. Instead, the evidence presented by the State and Pischel's own admissions during his testimony indicate that the online conversations between Pischel and "ljb92" were initiated by Pischel and that discussions of sexual activity were initiated by Pischel. The evidence indicates that it was Pischel who first proposed the possibility of the two engaging in sexual activity and that he initiated discussions to arrange a time and place for the two to meet. The evidence of activity by agents of the State in this case was that Sexton merely created a profile, was present in a chat room, and responded to communicationsincluding sexual communications initiated by Pischel. The communications by Sexton as "ljb92," including the associated emoticons, did not legally amount to inducement. The State merely created the opportunity for Pischel to communicate with a person described as a 15-year-old girl and to take such communication in a sexual direction.
Pischel argues that agents of the State played on his emotions and refers us to the end of the March 7 and June 1, 2007, conversations. On March 7, Pischel ended the brief online conversation with "ljb92" after being told that "ljb92" was less than 16 years of age. There was evidence that at the end of the March conversation, "ljb92" merely indicated "Whatever" and did not thereafter attempt to revive the conversation. The two did not converse again until June, and such conversation was initiated by Pischel.
With respect to the June 1, 2007, exchange, the evidence shows that after Pischel indicated to "ljb92" that it would not work for the two to meet that day, "ljb92" replied that "she" was "kinna let down" and was "close to being pissed" and sent an emoticon expressing anger. We note that although "ljb92" expressed some disappointment, such expressions were not persistent and that it was Pischel, not "ljb92," who initiated plans for the two to meet on June 4. We determine that such evidence does not indicate that the State was playing on Pischel's emotions to induce him into criminal activity and that the district court did not err as a matter of law when it concluded there was "not more than a scintilla of evidence" of inducement.
We conclude that because there was not evidence of inducement, the district court did not err in refusing Pischel's requested instruction on the affirmative defense of *607 entrapment. We reject this assignment of error.

Transcripts of Online Conversations Were Substantive Evidence of the Crime, and the Court Did Not Err in Allowing the Jury Access to the Transcripts During Deliberations.
[17] Pischel finally asserts that the court erred in allowing the jury access during deliberations to the transcripts of his online conversations with "ljb92." We conclude that the transcripts were not testimony but instead were substantive evidence of the crime charged and that, therefore, it was not error for the court to allow the jury access to the transcripts during deliberations.
At trial, the court admitted into evidence the transcripts that Sexton printed of the two conversations between "ljb92" and "lincolnpietaster" that occurred on June 1 and 4, 2007. Over Pischel's objection, the court allowed the jury access to the transcripts during deliberations. The court determined that the transcripts were not testimonial in nature but instead were evidence of the crime itself.
[18] Pischel cites State v. Dixon, 259 Neb. 976, 987, 614 N.W.2d 288, 297 (2000), in which we noted the traditional common-law rule, from which we "do not ordinarily stray," that a trial court has no discretion to submit testimonial materials to the jury for unsupervised review during deliberations. However, in a partial concurrence and partial dissent in Dixon, it was noted that a trial court has broad discretion in deciding whether to submit nontestimonial exhibits to the jury during its deliberations. Id. (Stephan, J., concurring in part, and in part dissenting) (citing Chambers v. State, 726 P.2d 1269 (Wyo.1986)). In particular, trial courts have broad discretion in allowing the jury to have unlimited access to properly received exhibits that constitute substantive evidence of the defendant's guilt. Id. (citing U.S. v. Puerta Restrepo, 814 F.2d 1236 (7th Cir.1987); State v. Castellanos, 132 Wash.2d 94, 935 P.2d 1353 (1997); Pino v. State 849 P.2d 716 (Wyo.1993); State v. Halvorson, 346 N.W.2d 704 (N.D.1984); and State v. Barbo, 339 N.W.2d 905 (Minn.1983)).
We agree with the district court's determination that the transcripts of online conversations were not testimonial material but instead were substantive evidence of Pischel's guilt. The online conversations and Pischel's statements therein were evidence of the elements of the crime of use of a computer to entice a child or peace officer believed to be a child for sexual purposes; therefore, the transcripts of such conversations were substantive evidence of the crime charged.
Because the transcripts were not testimony but instead substantive evidence of the crime charged, the court had broad discretion to allow the jury access to such evidence during deliberations. We conclude that the court did not abuse its discretion by allowing such access, and we reject Pischel's final assignment of error.

CONCLUSION
We conclude that any error in the admission of evidence obtained in the search of Pischel's vehicle was harmless error. We further conclude that the district court did not err in refusing Pischel's requested instruction on entrapment, nor did the court err in allowing the jury access to the written transcripts of the online conversations. We finally conclude that there was sufficient evidence to support Pischel's conviction. We therefore affirm Pischel's conviction and sentence.
AFFIRMED.