KUEHN, J., DISSENTING:
 

 ¶1 I dissent to the analysis of Proposition I, and to the conclusion that the comments on the 85% Rule, complained of in Proposition II, were harmless beyond a reasonable doubt. I believe the trial court's instruction on "transferred intent" was a correct statement of the law and appropriate in this circumstance. I believe the attorneys' misstatements of the 85% Rule could have affected the jury's sentence recommendation, and would affirm the conviction but remand for resentencing.
 

 ¶2 Appellant was convicted in Count 1 of intentionally killing Mitchell, the friend of Appellant's neighbor, Bryan, by intentionally firing a shotgun into a vehicle Mitchell was driving.
 
 [1]
 
 Appellant eventually admitted to police that he shot in the direction of the car Mitchell was driving (he actually fired more than once, and hit Mitchell in the center of the forehead from a distance of about 120
 yards). The shooting occurred at night, such that it would have been difficult for Appellant to see inside the car. Although the trial court noted that Appellant's various explanations of what happened were not consistent, it nevertheless included instructions on self-defense, and on depraved-mind murder as a lesser related offense. Rejecting these options, the jury concluded that Appellant fired his weapon into Mitchell's vehicle with an intent to kill.
 

 ¶3 The trial court instructed the jury on the concept of "transferred intent," OUJI-CR (2nd) No. 4-11 (Instruction No. 20). Neither party objected to this instruction. In fact, both parties discussed the implications of the instruction in closing argument. The State never claimed Appellant intended to kill
 
 Mitchell
 
 . Appellant was angry with his neighbor, Bryan, not Mitchell, and there was no evidence he intended to harm Mitchell. The prosecutor explained that under the doctrine of transferred intent, the fact that Appellant killed someone other than his intended victim did not excuse his conduct. Based on Appellant's conflicting accounts, defense counsel advanced a mixture of self-defense and accident, claiming Appellant was in reasonable fear of his life, but that he only meant to scare Bryan. Defense counsel claimed that because Appellant had a legal right to use deadly force to protect himself, killing Mitchell was an unfortunate accident that was excusable under the law.
 

 ¶4 In Proposition I, Appellant objects for the first time to the wording of Instruction 20. He concedes a transferred-intent instruction was appropriate, but claims the court's failure to properly edit the wording of the Uniform Instruction to fit these particular facts prejudiced him. Specifically he claims the instruction relieved the State of its duty to prove
 
 any
 
 intent to kill on his part. In Proposition III, he faults trial counsel for not recognizing this textual flaw.
 

 ¶5 The Majority's conclusion that the instruction was not warranted in this case is both incorrect and irrelevant. I appreciate the distinction between two classic fact patterns: one where the defendant accidentally kills someone other than his intended victim (the "bad aim" scenario), the other where he kills someone he mistakenly believes
 
 is
 
 his intended victim (the "mistake of fact" scenario). But however one labels these scenarios, the fact remains that
 
 neither of them
 
 excuses the defendant's conduct under Oklahoma law.
 

 ¶6 To prove premeditated murder, the State must establish the unlawful killing of another human with malice, and malice is the "deliberate intention unlawfully to take away the life of a human being." 21 O.S.Supp.2012, § 701.7(A) ;
 
 see also
 
 OUJI (2nd) No. 4-61.
 
 There is no requirement that the defendant's malice be directed at the person who was killed.
 

 Jackson v. State
 
 ,
 
 2016 OK CR 5
 
 , ¶ 8,
 
 371 P.3d 1120
 
 , 1122. That point may seem obvious to lawyers, but it may not be so obvious to the layman. Hence an instruction on the concept may be entirely appropriate in cases like this where a third party is inadvertently harmed, and it is appropriate
 
 regardless
 
 of whether the third party's harm was due to "bad aim" (accident) or "mistake of fact" (mistake). Over a century ago, this Court recognized the technical distinction between the two scenarios, but found no legal difference in the result.
 
 Fooshee v. State
 
 ,
 
 1910 OK CR 86
 
 ,
 
 3 Okl.Cr. 666
 
 ,
 
 108 P. 554
 
 , 560.
 
 [2]
 
 What's more, OUJI-CR (2nd) No. 4-11
 encompasses
 
 both
 
 scenarios, and reaches the same result regardless of whether the victim was harmed by "mistake" or "accident" OUJI-CR (2nd) No. 4-11.
 
 [3]
 

 ¶7 Even if the Majority were correct that the instruction was unwarranted here, the fact remains, the jury received it. The real issues are whether the instruction stated the applicable law, and if not, whether it renders the jury's verdict unreliable. I believe the instruction was appropriate to these facts and correctly stated the law. In fact, the trial court's editing made the instruction a more correct statement of the law (as applied to these facts) than the text of the Uniform Instruction itself. Uniform Instruction No. 4-11 contains alternatives to be selected based on what the defendant sought to do (assault, battery, or homicide), and the fate of the person mistakenly or accidentally harmed:
 

 If you find that the defendant intended to
 
 kill/ injure/ assault
 
 [Name of Intended Victim], and by mistake or accident
 
 injured/ assaulted
 
 [Name of Actual Victim], the element of intent is satisfied even though the defendant did not intend to
 
 kill/ injure/assault
 
 [Name of Actual Victim]. In such a case, the law regards the intent as transferred from the original intended victim to the actual victim.
 

 Id.
 

 The trial court altered the text to account for the fact that Mitchell was
 
 killed
 
 rather than injured, but left alternatives for Appellant's original intentions:
 

 If you find that the defendant intended to
 

 kill/ injure/assault
 

 THOMAS BRYAN, and by mistake or accident
 
 killed
 
 LELAND MITCHELL, the element of intent is satisfied even though the defendant did not intend to
 
 kill
 
 LELAND MITCHELL. In such a case, the law regards the intent as transferred from the original intended victim to the actual victim.
 

 ¶8 Appellant complains that the trial court left all three intent options in the first line of the text, but this was entirely proper under the facts.
 
 [4]
 
 While the State of course alleged that Appellant intended to kill Bryan, Appellant's statements to police disputed that claim; he insisted that he only meant to scare Bryan. In any event, the instruction as edited by the trial court certainly
 
 did not
 
 absolve the State from proving any criminal intent on Appellant's part, as he now claims. The first words of the instruction -- "
 
 If you find that the defendant intended to ...
 
 " -- speak for themselves. The instruction merely states this: Whatever the jury may believe Appellant
 was endeavoring to do to Bryan (scare him, kill him), his culpability is not mitigated ("
 
 is satisfied even though
 
 ") the person ultimately harmed by his conduct was someone else. That certainly comports with the law of this State.
 
 [5]
 
 Appellant's jury was properly instructed on the elements of premeditated murder and self-defense. Instruction No. 20 supplemented those instructions, but did not distort or contradict them. I find no reasonable probability that Instruction No. 20, as edited, could have contributed to an unreliable verdict, and no reason to fault trial counsel for not objecting to its wording.
 
 [6]
 

 ¶9 As to Proposition II, both the prosecutor and defense counsel repeatedly told the jury that "life means 45 years." Their explanations were at best unclear and at worst misstatements of the law. The prosecutor contrasted a life-without-parole sentence -- one where "you never get out," "that will be it," "he will never leave the penitentiary" -- with a straight life sentence, which "means 45 years." Defense counsel's own closing comments were just as misleading. She told the jury, "Most likely those sentence[d] on an 85% crime will do almost all of the time. Life is 45 years." Defense counsel concluded by asking the jury to impose a life sentence for murder, because "
 
 45 years is a life
 
 and that is the appropriate punishment for this crime." These comments can be construed as saying that a life sentence is, for
 
 all
 
 purposes, automatically transformed into a sentence of 45 years -- and that even if the defendant does not receive parole after 85% of that term, he
 
 will
 
 be released in 45 years.
 
 [7]
 
 The Majority is uncomfortable enough to suggest amending the applicable OUJI instruction, and I wholeheartedly agree with that proposal. But I am not confident that the comments by both attorneys here did not influence the jurors' understanding of the law and recommendation on sentence. Appellant's crime was reprehensible, and the results were tragic, but I would remand this case for resentencing.
 

 I would encourage the committee on uniform criminal jury instructions to examine the current Oklahoma Criminal Instruction on transferred intent. Other Courts have used similar, but different language to convey the same doctrine. A cursory search reveals the following:
 

 If you find that [the defendant] intended to [assault/injure/kill] a person other than [victim] and by mistake or accident [assaulted/injured/killed] [victim] the element of intent is satisfied, even though [the defendant] did not intend to [assault/injure/kill] [victim]. In such a case, the law regards the intent as transferred from the original intended victim to the actual victim.
 

 See
 

 Nebraska v. Moore
 
 ,
 
 16 Neb.App. 27
 
 ,
 
 740 N.W.2d 52
 
 , 56 (2007),
 
 affirmed on other grounds in
 

 Nebraska v. Moore
 
 ,
 
 276 Neb. 1
 
 ,
 
 751 N.W.2d 631
 
 (2008). Also:
 

 When one intends to kill or injure a certain person, and by mistake or accident kills a different person, the crime, if any, is the same as though the original intended victim had been killed. In such a case, the law regards the intent as transferred from the original intended victim to the actual victim.
 

 See
 
 Uniform Jury Instruction-Criminal 14-255
 
 New Mexico Rules Annotated
 
 (NMRA) 1999
 

 Also, a defendant should neither avail himself of a defense nor receive a discount when his well-aimed shot kills the intended victim and also kills another person.
 

 One esteemed legal commentator believes the notion that a defendant's intent is "transferred" from the intended victim to the accidental victim is a solution in search of a problem -- it may be relevant in tort, but "has no proper place in criminal law," where it is "a misleading half-truth, often given as an improper reason for a correct result, but incapable of strict application." Perkins,
 
 Criminal Law
 
 (2d ed. 1969) at 822. With regard to malice murder, Perkins believes there is no need to resort to the concept unless, for some reason, the jurisdiction requires that the defendant's intent to kill be directed at the person killed.
 
 Id
 
 . at 827. Perkins also recognizes the "mistake of fact" cases as falling in the same general category:
 

 In case of an attack made upon the wrong person as a result of mistaken identity, needless to say, the law will recognize that the assailant "meant to murder the man at whom he shot" although he had in mind the name of another man who was not there.
 

 Id.
 

 The Majority's reference to Professor LaFave on the subject is in complete accord:
 

 [The defendant's] conceivable argument that his mistake of fact (as to the victim's identity) somehow negatives his guilt of murder would be unavailing: his mistake does not negative his intent to kill; and on the facts as he supposes them to be [he] is just as guilty of murder as he is on the facts which really exist.
 

 LaFave,
 
 Substantive Criminal Law
 
 § 6.4(d) at 48 (3rd ed. 2017).
 

 A glaring problem with the Uniform Instruction is that it does not contemplate the situation where -- as here -- the unintended victim dies. This may be because the Instruction is placed in the chapter on Assault and Battery, not Homicide. The trial court here wisely and correctly edited the instruction to account for the fact that Mitchell was killed, not injured or assaulted, by mistake or accident. The Instruction should be amended to include the situation where the victim dies, or a similar Instruction covering that scenario should be included in the chapter on homicides.
 

 Of course I also disagree with the Majority's conclusion (Op. at 619) that the instruction was error because it "permitted the jury to find that Appellant had the intent to kill Mitchell based on a pre-existing intent to injure or assault Bryan." The State
 
 never claimed
 
 Appellant had any intent to kill
 
 Mitchell
 
 ; our law does not require it, and the instruction does not suggest it.
 

 See
 

 Short v. State
 
 ,
 
 1999 OK CR 15
 
 , ¶ 46,
 
 980 P.2d 1081
 
 , 1099 (in malice murder prosecution, where the victim was someone other than those the defendant sought to harm, jury instruction explaining that "the intent to kill as to one person is sufficient to convict as to another person actually harmed" did not absolve the State of its burden of proof).
 

 For example, the prosecutor told the jury, "Life in the State of Oklahoma means 45, which means that you are eligible for parole after 38 years and three months." The first clause is a patent misstatement of the law, even if the second one is technically correct. The Majority finds no harm because these were 85% crimes, but that is not the problem here. The Uniform Instruction on the 85% Rule is a correct statement as far as it goes, but still leaves room for jurors (and attorneys) to conclude that "life means 45 years" is a rule all its own. Telling a jury that the defendant will be released after 85% of his sentence (the Florez situation) is a different error from suggesting that regardless of parole, a life sentence equals 45 years.