Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2023 09:05 AM CST

State of Nebraska, appellee,
v. Perry F. Hines, appellant.

___ N.W.2d ___

Filed March 3, 2023.    No. S-22-288.

1. **Jury Instructions: Entrapment: Appeal and Error.** Whether jury instructions given by a trial court are correct, including whether an entrapment instruction should have been given, is a question of law reviewed de novo.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Criminal Law: Entrapment: Words and Phrases.** In Nebraska, entrapment is an affirmative defense consisting of two elements: (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense.

4. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

5. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

Appeal from the District Court for Hall County: Patrick M. Lee, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Over the course of several weeks, Perry F. Hines communicated over Facebook with an individual claiming to be a teenage girl. Hines turned the conversations to sexual matters and sent a picture of his penis. Eventually, he arranged a meeting at a local park. But the person with whom Hines was corresponding was actually a law enforcement officer, and when Hines arrived at the park, he was arrested.

A jury later convicted Hines of use of an electronic communication device to commit sexual assault, in violation of Neb. Rev. Stat. § 28-320.02 (Reissue 2016), and enticement by an electronic communication device, in violation of Neb. Rev. Stat. § 28-833(1)(a) (Reissue 2016). The district court sentenced him to a term of 15 to 30 years' imprisonment on the first conviction and 23 to 24 months' imprisonment on the second. On appeal, Hines argues that the district court erred by failing to instruct the jury on the affirmative defense of entrapment and by imposing excessive sentences. We find no error and affirm.

## BACKGROUND

*"Lily Williamson."*

At trial, the State's primary witness was Cayla Larkins, an officer with the Grand Island Police Department. Larkins testified that her duties included investigating "cyber crimes" against children and that, as part of those duties, she created and maintained various undercover profiles on social

media websites. Larkins created such a profile on Facebook for what appeared to be a teenage girl with the name "Lily Williamson."

In January 2021, Hines, who was 61 years old at the time, requested to be friends with the Lily Williamson profile and began sending chat messages to it. Larkins thereafter communicated with Hines for several weeks, at all times posing as Lily Williamson. Because these chat conversations were the primary evidence upon which the State relied at trial, we recite pertinent portions below. We do so without correcting or noting incorrect spelling, punctuation, or grammar. All references to messages sent by "Lily" refer to messages sent by Larkins posing as Lily Williamson.

*Facebook Chats.*

Hines initiated the first communication with Lily on January 21, 2021. Shortly after the conversation began and pleasantries were exchanged, Hines stated that Lily was a "cutie." He later asked for her age, and Lily responded that she "turned 16 last month." Hines responded that he "didn't realize your still young" and that "when your trying to meet a lady in line you have to be careful right?" The two later exchanged pictures of themselves at Hines' request and continued to send messages to each other for a few days. In one of those messages, Hines said, "I sure wish I could talk to in person."

In February 2021, Hines again initiated contact with Lily. During a conversation that spanned several days, Hines sent a message that he "wanted to see" Lily "because I wanted to make love to you." At that point, Lily asked if she could be honest with Hines. After Hines agreed, Lily stated that she "actually just turned 14." Hines then apologized, but shortly thereafter asked, "would you have made love to me?" When Lily asked what Hines would "wanna do if we met in person," Hines responded, "I really don't know there are a lot of moral issues involved here probably just talk. Have you done this

before." Lily replied that she had not. Hines then asked Lily whether she was a virgin, and Lily responded that she was.

Several days later, Hines again asked to see Lily, tried to talk to her via a Facebook audio call, and asked for another picture of her. The parties again exchanged pictures. The next day, Hines asked Lily why she wanted to see him. She replied, "You're interested in me lol. I like talking to you. What made you want to see me?" Hines responded, "Well I think your a good person a little to trusting but good heart and your cute." Later in the conversation, Hines sent a message stating, "Boo you know I could go to prison for a long long time for see you right?"

On March 2, 2021, Hines again asked about meeting in person and told Lily to let him know when she could leave her house. Two days later, Hines again expressed a desire to see Lily and again turned the conversation toward sexual topics, telling Lily, "I don't think it's my blessing to take your vaginity." He later asked, "why do you feel im worthy to have a gift like that?" Lily responded, "why wouldnt u think ur worthy?? i wouldnt be talkin to u if u werent." In the same conversation, Hines stated, "why don't we try to see one another and go from there k," to which Lily responded, "ok." He also asked if Lily was "curious about sex."

The next day, the parties again exchanged messages and Hines told Lily that he is "nice" to her "Because your so nice to me you are willing to give me a gift that can only be given once." He also stated that "the outside world would look at me as a cradle robber." Hines later suggested that they exchange "private" pictures. When Lily asked for clarification, Hines responded, "Down below no faces." Before Lily responded, Hines sent her a picture of his penis. He later said, "Boo I apologize if you think less of me go ahead and erase it if you want k." Lily responded, "Oh wow!! Lol. I don't think less of you." When asked if she was going to send a picture, Lily replied that she was currently with her parents, but might send one later.

On March 9, 2021, Hines and Lily again exchanged messages. During the exchange, Hines stated that "im still waiting on the selfie." When Lily expressed reluctance because a friend "got in big trouble for sending a nude," Hines asked, "What about panties and bra and one you can feel comfortable about?" Lily responded that "i dont want u to get in any trouble since im 14 ya know." Hines then again inquired about meeting. This time, Lily agreed to meet Hines at a local park, saying "when I see u pull up ill get in with u." Hines drove to the park, and law enforcement arrested him there.

At various times in the chat conversations, Lily complained to Hines about her parents, their drinking, her inability to get a job, and boys her age. Larkins testified that when she creates and maintains undercover social media profiles, she refers to such specific details as part of an effort to make the profile "appear as though they are a real person."

*Hines' Testimony.*

Hines testified at trial in his own defense. He admitted to corresponding with the Lily Williamson account on Facebook. He claimed that, during the conversations, he thought he might be communicating with a scam artist or a prior girlfriend who was attempting to play a prank on him but that he continued the conversations because he wanted to discover the identity of the person with whom he was communicating. Hines also testified, however, that he did not foreclose the possibility that Lily was who she claimed to be. In that respect, he testified that he felt sorry for Lily and wanted to help her. Hines admitted to sending the picture of his penis, but acknowledged it was "stupid."

Hines also admitted to arranging the meeting at the park on March 9, 2021. According to Hines, the purpose of the meeting was to "[s]ee who I was talking to." He denied that he went to the park intending to have sex with Lily. He claimed that if Lily had been at the park, he would have told her, "[Y]ou need to quit this because this is dangerous."

*Verdicts and Sentencing.*

At the close of the evidence at trial, the district court denied Hines' request to instruct the jury on the affirmative defense of entrapment. Without an entrapment instruction, Hines' counsel argued in closing argument that the State failed to show that Hines had the necessary intent to commit the charged offenses.

The jury convicted Hines of use of an electronic communication device to commit sexual assault and enticement by an electronic communication device. The district court sentenced him to 15 to 30 years' imprisonment on the first conviction and 23 to 24 months' imprisonment on the second conviction, with the sentences to run consecutively.

## ASSIGNMENTS OF ERROR

Hines assigns that the district court erred (1) by failing to give his requested jury instruction on entrapment and (2) by imposing excessive sentences.

## STANDARD OF REVIEW

[1] Whether jury instructions given by a trial court are correct, including whether an entrapment instruction should have been given, is a question of law reviewed de novo. See *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014).

[2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

## ANALYSIS

*Entrapment Instruction.*

[3] We first address Hines' argument that the district court erred by refusing to instruct the jury on entrapment. In Nebraska, entrapment is an affirmative defense consisting of two elements: (1) the government induced the defendant to commit the offense charged and (2) the defendant's

predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense. *State v. Pischel*, 277 Neb. 412, 762 N.W.2d 595 (2009). When a defendant raises the defense of entrapment, the trial court must determine, as a matter of law, whether the defendant has presented sufficient evidence to warrant a jury instruction on entrapment. *Id.* A defendant satisfies this initial burden, and is entitled to a jury instruction on entrapment, if he can point to more than a scintilla of evidence that the government induced him to commit the offense. See *id.* If the defendant meets this initial burden, then the State bears the burden of proving beyond a reasonable doubt that the defendant was not entrapped. See *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001).

Hines argues that he presented sufficient evidence of inducement to submit the entrapment defense to the jury. This court has said that inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense. See *Pischel, supra*. Inducement requires something more, however, than that a government agent or informant suggested the crime and provided the occasion for it. *Id.* Inducement consists of an opportunity plus something else, such as excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, noncriminal type of motive. *Id.* We have recognized that inducement could occur through persuasion, fraudulent representation, threats, coercive tactics, harassment, promise of reward, or pleas based on need, sympathy, or friendship. See *id.*

Hines makes no argument in this case that he was entitled to an entrapment instruction merely because Larkins created a fictitious profile and then interacted with Hines under the guise of that fictitious persona. Any such argument would go nowhere. Many years ago, this court recognized that law enforcement is not precluded from using "artifice and stratagem, such as the use of decoys or undercover agents" in the

investigation of crimes. *State v. Lampone*, 205 Neb. 325, 328, 287 N.W.2d 442, 444 (1980). As another court has observed, if the law enforcement's use of deception alone constituted entrapment, it would be difficult or impossible "to stop certain seriously criminal activity, particularly activity involving drugs, or corruption, or other crimes in which no direct participant wants the crime detected." *U.S. v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994) (Breyer C.J.).

While Hines does not argue that there was evidence of entrapment solely because Larkins posed as a teenage girl, he does argue that some of Larkins' statements, while posing as Lily, were sufficient evidence of inducement such that the jury should have received an entrapment instruction. Drawing on the list of actions that we have said may constitute inducement, Hines contends there was more than a scintilla of evidence that Larkins engaged in persuasion, played upon his sympathy, and took advantage of his alternative, noncriminal motives. We address each of these arguments in turn.

Hines first argues there was sufficient evidence that Larkins, while posing as Lily, engaged in persuasion. He identifies two portions of the chat conversations in which he claims persuasion occurred. The first was when Lily responded to his question about why she felt he was worthy to take her virginity by stating that she would not be talking to Hines if she did not think he was worthy. The second was when Lily said that she did not think less of Hines after he sent the picture of his penis.

We disagree that these statements constitute evidence of persuasion. In neither of the statements identified by Hines did Larkins, while posing as Lily, request, encourage, or attempt to convince Hines to engage in criminal activity. At the very most, these statements signaled that Lily was willing to have conversations of a sexual nature on Facebook and perhaps open to engaging in sexual activity with Hines. Expression of such willingness, however, at most afforded an opportunity for criminal activity, which we have consistently said

does not constitute entrapment. See, e.g., *State v. Graham*, 259 Neb. 966, 614 N.W.2d 266 (2000).

Our conclusion that Hines has not identified evidence of inducement based on persuasion is consistent with prior decisions of this court. In *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984), we held that a defendant who testified that he was approached by a government informant and asked if he could obtain marijuana was not entitled to an entrapment instruction. We explained that "[i]nquiry alone . . . does not supply the degree of persuasion necessary for entrapment." *Id.* at 825, 352 N.W.2d at 154. Similarly, in *State v. Pischel*, 277 Neb. 412, 762 N.W.2d 595 (2009), we held that a defendant was not entitled to an entrapment instruction in a prosecution for child enticement based on a series of online chats with a decoy that led to the arrangement of an in-person meeting. In that case, the defendant contended that he was entitled to the entrapment instruction based on evidence that when he said he could not meet on a particular day, the decoy expressed disappointment and anger. We rejected the argument that these expressions constituted inducement and noted that it was the defendant that initiated the plans for the later meeting at which he was arrested.

In this case, the statements Hines identifies as persuasion do not even amount to an inquiry regarding criminal activity, which we held in *Swenson, supra*, was insufficient to constitute inducement. In addition, the statements Hines relies upon are similar to the statements described above in *Pischel, supra*, in that both might be understood as a decoy's expression of willingness to engage in criminal activity. In *Pischel*, however, we rejected the argument that such statements alone constituted evidence of inducement.

This case is also unlike *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001), a case Hines relies upon, in which we found inducement. In that case, we found inducement based on evidence that a law enforcement officer, posing as a minor, among other things, encouraged the defendant to describe

how he would engage in sexual activity with her, was the first to suggest an in-person meeting at a motel, and then created a sense of urgency for the meeting to occur by saying that the minor would soon be going out of town. This, we said, "went beyond merely providing an opportunity to commit the crime." *Id.* at 201, 629 N.W.2d at 555. In this case, however, there was no evidence of similar encouragement. Instead, the evidence shows that it was Hines who first initiated contact with Lily, first brought up sexual matters, first suggested exchanging intimate pictures, and first suggested an in-person meeting. As with the defendant in *Pischel*, the "State merely created the opportunity" for Hines to communicate with a person purporting to be a 14-year-old girl "and to take such communication in a sexual direction." 277 Neb. at 426, 762 N.W.2d at 606.

Hines fares no better with his argument that entrapment should have been submitted to the jury because there was evidence that Larkins impermissibly appealed to Hines' sympathy. Here, Hines argues that when Larkins conveyed complaints regarding Lily's parents, their drinking, her inability to get a job, and boys her age, she was attempting to make Hines sympathetic to Lily. This, he argues, is evidence of inducement. We disagree.

In our prior cases, we have said that *pleas* based on sympathy may constitute inducement. One noteworthy example of this type of inducement can be found in *Sherman v. United States*, 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958). In that case, a government informant met the defendant at a doctor's office where both were apparently being treated for narcotics addiction. The informant and the defendant then formed a relationship, discussing their mutual experiences. Later, however, the informant told the defendant that the informant was not responding to treatment and asked the defendant to supply him with narcotics. After multiple requests "predicated on [the informant's] presumed suffering," the defendant obtained narcotics for the informant. *Id.*, 356 U.S. at 371.

Relying on the fact that the informant "resort[ed] to sympathy" when asking the defendant to purchase narcotics for him, the U.S. Supreme Court found that this evidence established inducement as a matter of law. *Id.*, 356 U.S. at 373.

In stark contrast to a case like *Sherman*, there is no evidence in this case that a law enforcement agent made a plea to Hines' sympathy as part of a request that Hines break the law. Although Hines claims that Lily's purported difficulties made him feel sorry for her, there was no evidence that law enforcement relied on any such feelings as part of an effort to have Hines commit the offenses of which he was convicted. Hines cannot show that there was any evidence of the kind of plea based on sympathy that would constitute inducement.

Hines' final argument that there was sufficient evidence of inducement to warrant an entrapment instruction suffers from similar problems. As noted, Hines contends that there was more than a scintilla of evidence that law enforcement took advantage of his alternative, noncriminal motives. Hines claims he offered evidence of two noncriminal motives for his online communications and arrangement of a meeting at the park: that he wanted to determine if a scam artist or former girlfriend was behind the Lily Williamson account and that, if Lily was actually who she claimed to be, he wanted to discourage her from engaging in the type of online conversations she had with him.

As described above, Hines did testify that his communication and arrangement of a meeting with Lily were motivated by a desire to discover Lily's identity or, alternatively, to warn or help her. But the fact that Hines adduced some evidence that *he acted* with a noncriminal motive did not entitle him to an entrapment instruction. Inducement can result if the government *takes advantage* of a noncriminal motive. See *State v. Pischel*, 277 Neb. 412, 762 N.W.2d 595 (2009).

To demonstrate that Hines' noncriminal motive argument falls short, we, once again, find it helpful to juxtapose the facts of this case with the facts of a case in which such an

argument succeeded. In both *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001), and another case involving entrapment, *State v. Canaday*, 263 Neb. 566, 641 N.W.2d 13 (2002), this court discussed *U.S. v. Poehlman*, 217 F.3d 692 (9th Cir. 2000). In *Poehlman*, a recently divorced defendant with unusual sexual proclivities was searching for a companion in "'alternative lifestyle'" discussion groups on the internet. *Id.* at 695. There, he responded to an advertisement posted by a law enforcement agent posing as a woman who claimed to be looking for someone who understood her family's "'unique needs.'" *Id.* Thereafter followed an extensive email correspondence in which the defendant expressed an interest in a relationship with the woman, but the woman hinted at a desire to have the defendant engage in sexual acts with her children. The defendant eventually came to understand the woman's hints, expressed a willingness to engage in sexual acts with her children, and traveled to meet the woman and her children at a hotel room.

In reversing the defendant's conviction on entrapment grounds, the U.S. Court of Appeals for the Ninth Circuit concluded that the law enforcement agent took advantage of the defendant's desire for a relationship with the woman by conditioning any such relationship on his willingness to engage in sexual acts with her children. *Id.* at 702 ("[t]he government thus played on [the defendant's] obvious need for an adult relationship, for acceptance of his sexual proclivities and for a family, to draw him ever deeper into a sexual fantasy world involving these imaginary girls").

But while the *Poehlman* court found that the government used the defendant's noncriminal motivation for a relationship with an adult woman to lure him into criminal activity, there is no similar evidence in this case that law enforcement took advantage of Hines' noncriminal motives. There is no evidence here that law enforcement even knew about Hines' claimed alternative motivations, much less that it took advantage of them.

In fact, Hines appears to misunderstand what it means for law enforcement to induce a defendant into criminal activity by taking advantage of a noncriminal motive. Unable to point to evidence that law enforcement knew of or took advantage of his claimed noncriminal motives, all that Hines has left is an argument that in his online interactions with Lily and in his arranging to meet her at the park, he lacked the requisite intent to commit either use of an electronic communication device to commit sexual assault or enticement by an electronic communication device. But a contention that there was an absence of the necessary criminal intent is not an argument that Hines was entrapped; it is an argument that Hines did not commit the essential elements of the charged offenses. The jury rejected that argument at trial, and Hines does not contend on appeal that the evidence was insufficient to support his convictions.

For these reasons, Hines cannot point to even a scintilla of evidence that the State induced him to commit the offenses. The district court therefore did not err in refusing to submit an entrapment instruction to the jury.

*Excessive Sentences.*

This leaves Hines' contention that his sentences were excessive. On this point, Hines does not and cannot dispute that he was sentenced within the statutory limits. His sentences were within the 3- to 50-year statutory range for use of an electronic communication device to commit sexual assault and the 0- to 2-year statutory range for enticement by electronic communication device. See Neb. Rev. Stat. §§ 28-105(1) (Cum. Supp. 2022), 28-320.02, and 28-833(1)(a). Instead, Hines argues that the district court failed to adequately consider his age, his alleged motivation to help Lily, his social background, evidence of his drug addiction, the fact that there was no violence involved in the offense, and the results of two sex offender risk assessments. We are not persuaded.

[4,5] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

We conclude that the district court did not abuse its discretion in sentencing Hines. The district court expressly stated that it considered the parties' arguments and the sentencing factors listed above. It rejected Hines' argument that he was motivated to help Lily and noted that "[h]ad the undercover officer been in fact a 14-year-old girl, the Court believes that this would have resulted in sexual assault on a child." The district court also considered that sexual assault is "one of the most serious offenses" and found "very few mitigators" that would weigh in favor of a lower sentence. And while the presentence investigation report revealed that Hines scored "moderate low" and "low" risk on certain sex offender assessments, it also shows that Hines has a "[v]ery [h]igh" risk of reoffending generally. On this record, we cannot say that the district court abused its discretion in imposing its sentences.

## CONCLUSION

The district court did not err by refusing to instruct the jury on entrapment or by imposing excessive sentences. The judgment of the district court is affirmed.

Affirmed.