IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TRAUTMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ISRAEL A. TRAUTMAN, APPELLANT.

Filed August 15, 2023.    No. A-23-052.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Dana DeSimone, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Israel A. Trautman appeals from his plea-based conviction in the district court for Hall County for two counts of first-degree sexual assault, three counts of visual depiction of sexually explicit conduct, and four counts of intentional child abuse. Trautman asserts that he received ineffective assistance of counsel and that the district court abused its discretion in imposing an excessive sentence. We affirm.

## STATEMENT OF FACTS

On June 2, 2022, the State charged Trautman by complaint in Hall County Court with human trafficking of a minor, a Class IB felony, and visual depiction of sexually explicit conduct, a Class III felony. On July 14, Trautman was charged by an amended complaint with 21 counts including nine counts of human trafficking of a minor, a Class IB felony; one count of human trafficking, a Class II felony; two counts of first-degree sexual assault, a Class II felony; five counts

of visual depiction of sexually explicit conduct, a Class III felony; and four counts of intentional child abuse, a Class IIIA felony. The case was subsequently bound over to district court where, on August 4, the State charged Trautman as it had in the county court amended complaint.

At a plea hearing on September 27, 2022, the district court noted that an agreement had been reached, whereby Trautman would enter a plea of no contest to the State's amended information and the State would agree to stand silent regarding whether the sentences should run concurrently or consecutively. An amended information filed by the State earlier that day charged Trautman with nine counts including two counts of first-degree sexual assault, three counts of visual depiction of sexually explicit conduct, and four counts of intentional child abuse. The State confirmed the court's understanding of the plea agreement and Trautman indicated that he wanted to proceed with the agreement.

The district court advised Trautman of the nature of the nine charges and the possible penalties. Trautman was also advised of his various rights that he would be waiving by entering a plea. Trautman acknowledged that he understood the charges, the possible penalties, and the rights he would be waiving. Trautman affirmed that he had sufficient time to discuss the case with his attorney, that he told his attorney everything he was aware of regarding the circumstances of his case, and that he was ready to enter his pleas. Trautman also asserted that he was entering his pleas freely and voluntarily and that his pleas were not the result of any threats or promises.

The following factual basis was recited by the State at the plea hearing:

[On] or about March 13, 2022, D.C. had her social media account hacked and a sexually explicit video of her was posted to her social media account. That video was quickly deleted.

On or about May 4, 2022, D.C. was contacted from a phone number associated with [Trautman]. A text sent to D.C. displayed screen captures of a sexually explicit video, including an image of D.C.'s exposed breasts. The message threatened D.C. with publishing the images, identity, and contact information if she did not provide additional sexually explicit content.

D.C. was born in 2007 and was under the age of 18 at all relevant times. [Trautman] was a social media contact of D.C. when the sexually explicit video was posted in March of 2022.

Law enforcement was contacted by D.C., and further investigation led to the determination that the source of the text was . . . Israel Trautman. Law enforcement contacted [Trautman] who was placed under arrest. It was determined that [Trautman] had posted a photo of the victim through Reddit. [Trautman]'s phone was seized upon his arrest, and after examination by law enforcement, a number of other videos, texts, and solicitations were found.

S.B. was contacted by law enforcement as a number of sexually explicit photos of her were located on [Trautman]'s phone. S.B. is 17 years of age now, but reported she was 14 or 15 at the time of the taking of the photos. S.B. was contacted by [Trautman] in an attempt to coerce her to send him more nude photos. He threatened to release the photos on social media if she did not.

A review of [Trautman]'s online presence found that he had two accounts on Reddit, one of which was used to post sexually explicit photos of S.B. on or about June 1, 2022.

D.V. was contacted by law enforcement as her image was located on Reddit having been posted by one of the accounts held by [Trautman]. The image was posted on or about March 31, 2022, at which time D.V. was 13 years old.

D.V. was contacted by law enforcement. She informed them that she had been receiving harassing emails from a number later determined to be associated with [Trautman] demanding she send nude photos to him. Messages were located on [Trautman]'s phone to other Reddit users providing them with more photos of D.V. and her contact information.

S.T. is 17 years old and was contacted by law enforcement after sexually explicit photos and videos of her were found on [Trautman]'s phone from May 1, 2020, when she would have been 14 years old. These appeared to be screenshots and recordings made by [Trautman] on his phone. These photos and videos were sent to S.T. On [Trautman]'s phone was located one text message between [Trautman] and S.T. where he sent her a photo of an exposed penis.

S.T. informed law enforcement that she had never given [Trautman] permission to create images of the sexually explicit photos or recordings.

M.S. is 14 years old, but was 12 when she and [Trautman] dated between October [2020] and May of 2021. [Trautman] would have been 16 at the time.

Law enforcement contacted M.S. after sexually explicit photos and videos of her were found on his phone. She stated that their relationship was sexual at times, and many times when she did not want to have sex with [Trautman], he slapped her on the back and face until she allowed him to have sex with her. Many sexual events between the two were forcible, including one on [or about] October 1, 2020, where [Trautman] forced sexual intercourse upon M.S. despite her stating she didn't want to.

A.C. was contacted by law enforcement after TextNow conversations were found on the [Trautman]'s phone where. . . on or about May 7, 2022, [Trautman] was soliciting photos of A.C. [Trautman] threatened A.C. with sexually explicit photos of her in his possession if she did not send him more of such photos.

[Trautman] told A.C. that if she did not send him more sexually explicit photos, he would release the photos in his possession, along with her name, number, and Snapchat account. She was 17 years old at the time.

A.E. was contacted by law enforcement after the search of [Trautman]'s phone and they located multiple sexually explicit photos of her. She was 17 years old at the time. She informed law enforcement that she had been contacted by [Trautman] in an attempt to elicit more nude photos from her with a threat that if she didn't, he would release them on social media. A search of [Trautman]'s phone and the internet determined [Trautman] had in fact posted nude photos of A.E. on Reddit on or about May 6, 2022.

H.B. was contacted by law enforcement after a video of a sexual assault of her when she was 15 was located on [Trautman]'s phone. This video was 17 minutes in length and shows sexual penetration of H.B. when she was clearly intoxicated.

H.B. reported to law enforcement that she came to [Trautman]'s home on the night of November 29, 2021, already intoxicated. [Trautman] took her to the basement where she passed out. H.B. awoke to find [Trautman] penetrating her vaginally with his penis. She stated that she has little to no other recollection of that evening, being too drunk at the time to recall and clearly too drunk to consent to sexual intercourse.

I.E. was contacted by law enforcement after sexually-explicit photos of her were located on [Trautman]'s phone. I.E. informed law enforcement that the photos were taken when she was 14 years old. A search of [Trautman]'s phone and the internet showed [Trautman] posted one of the sexually explicit photos of I.E. on Reddit on or about February 1, 2022.

All of these events occurred in Hall County, Nebraska.

The district court found that there was a factual basis for the plea; that Trautman understood the charges and possible penalties; and that he understood his trial rights and knowingly, intelligently, and voluntarily waived each of those rights. The court accepted Trautman's plea of no contest and found him guilty on all nine counts.

Sentencing was held on January 6, 2023. Trautman was sentenced to 25 to 50 years' imprisonment for each of the two counts of first-degree sexual assault, 3 to 4 years' imprisonment for each of the three counts of visual depiction of sexually explicit conduct, and 2 to 3 years' imprisonment for each of the four counts of intentional child abuse. The district court ordered that all sentences run consecutively to one another other. Trautman was given credit for 191 days served.

Trautman appeals.

ASSIGNMENTS OF ERROR

Trautman assigns, restated, that (1) he received ineffective assistance of counsel, and (2) the district court abused its discretion in imposing an excessive sentence.

STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hines*, 313 Neb. 685, 985 N.W.2d 625 (2023).

ANALYSIS

*Ineffective Assistance of Trial Counsel Framework.*

Trautman argues that his trial counsel was ineffective in three regards. Before addressing each claim, we set forth the general legal framework for ineffective assistance of counsel claims.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id*.

When, as in this case, a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

*Failure to Request H.B.'s CAC Interview.*

Trautman first assigns that his trial counsel was ineffective in failing to request the Child Advocacy Center (CAC) interview of H.B., one of several victims. Trautman argues that the sexual encounter with H.B. was consensual and that he was not aware that H.B. was intoxicated when she arrived at his home. Trautman claims that trial counsel reviewed only H.B.'s hearsay statements contained in the police reports and did not evaluate H.B.'s demeanor and body language captured in her CAC interview. Trautman argues he was unable to assert consent as an affirmative defense because trial counsel did not request or review H.B.'s CAC interview.

This claim can be resolved under the prejudice prong of the ineffective assistance analysis. We conclude that Trautman cannot show prejudice in trial counsel's alleged failure to request or review the CAC interview. The likelihood of the defense's success had the defendant insisted on

going to trial is relevant to the prejudice analysis; it is relevant to the consideration of whether a rational defendant would have insisted on going to trial. See *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id.*

In determining whether Trautman would have rejected the plea offer and insisted on going to trial if counsel had pointed out H.B.'s alleged consent or inconsistent statements, we must also consider the evidence against him. In addition to H.B.'s CAC interview and statements to the police, the State also had evidence from Trautman himself. As noted in the factual basis, Trautman captured a 17-minute-long video of his sexual encounter with H.B. where she appears to be "clearly intoxicated."

Trautman's plea agreement dropped 12 charges from the original information, including nine counts of human trafficking of a minor, a Class IB felony, with a mandatory minimum sentence of 15 years' imprisonment upon conviction; one count of human trafficking, a Class II felony, with possible imprisonment of 1 to 50 years; and two counts of visual depiction of sexually explicit conduct, a Class III felony, with possible imprisonment of up to 4 years. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2022). This plea agreement allowed Trautman to escape nine 15-year mandatory minimum sentences if convicted of all counts of human trafficking of a minor, and additional sentences up to 50 years' and 8 years' imprisonment if convicted of human trafficking and two counts of visual depiction of sexually explicit conduct, respectively.

Considering the strength of the State's case and the possible penalties, compared with the chance of discrepancies between H.B.'s CAC interview and the police reports, Trautman cannot show a reasonable probability that he would have insisted on going to trial rather than entering into the plea agreement. This claim fails.

*Failure to Depose H.B. and Review State's Evidence.*

Trautman next assigns that his trial counsel was ineffective in failing to depose H.B. and review the video recorded by Trautman. Trautman asserts that had his trial counsel "reviewed the videos referenced in the police reports and deposed H.B., a defense of consent and the ability to give consent could have been developed." Brief for appellant at 11.

This claim fails for the same reasons as the claim above. Trautman cannot show prejudice as he cannot demonstrate a reasonable probability that had his counsel deposed H.B. and reviewed the video of the sexual encounter, Trautman would have rejected the plea agreement and insisted on going to trial on all 21 counts. See *State v. Manjikian, supra*. This claim fails.

*Failure to Investigate.*

Trautman assigns that his trial counsel was ineffective in failing to minimally investigate the case when doing so would not have endangered the State's plea offer. Trautman does not argue that trial counsel did not review the provided discovery, as he concedes that fact is not in the record, and notes only that the plea deal was reached 5 days after the State provided trial counsel with discovery. Trautman does not further elaborate the basis for this claimed trial counsel deficiency, such as what specific charges could not be proven and what facts would have led Trautman to insist on a trial rather than accepting the plea agreement. Assignments of error on direct appeal

regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Thus, we conclude that Trautman has failed to allege this claim of deficient performance with sufficient particularity. This claim fails.

*Excessive Sentence.*

Trautman next assigns that the sentences imposed by the district court were excessive and amounted to an abuse of discretion. Trautman was convicted of two counts of first-degree sexual assault, a Class II felony, which is punishable by a minimum of 1 year and a maximum of 50 years' imprisonment. See § 28-105(1) Trautman was also convicted of three counts of visual depiction of sexually explicit conduct, a Class III felony, which is punishable by a maximum of 4 years' imprisonment and 2 years' post-release supervision, a $25,000 fine, or both. See § 28-105(1). Finally, Trautman was convicted of four counts of intentional child abuse, a Class IIIA felony, which is punishable by a maximum of 3 years' imprisonment and 18 months post-release supervision, a $10,000 fine, or both. See § 28-105. However, because Trautman was also sentenced for two Class II felonies, post-release supervision is not applicable here. See Neb. Rev. Stat. § 28-105(6) (Cum. Supp. 2022) (any person who is sentenced to imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony shall not be subject to post-release supervision).

Trautman was sentenced to consecutive terms of 25 to 50 years on the two Class II felony charges, 3 to 4 years on the three Class III felony charges, and 2 to 3 years on the four Class IIIA felony charges. Thus, his sentences were within the statutory range. Nevertheless, Trautman argues that the sentences were excessive and that the district court failed to adequately consider all the relevant statutory factors, particularly his age and social background. He notes that he was a teenager when the offenses were committed; his grandparents, who were his guardians, provided poor supervision and encouraged unlawful conduct; and he was the victim of sexual abuse perpetrated by an older sibling, for which he received no therapeutic resources.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Hines*, 313 Neb. 685, 985 N.W.2d 625 (2023). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022).

The presentence investigation report (PSR) indicates that Trautman was between the ages of 16 and 18 at the time of the various offenses, had graduated from high school, and was living with his maternal grandparents who he described as good people but passive disciplinarians. Trautman was adopted by his grandparents as an infant, as his father was deported and his mother

has a history of substance use. Through the investigation for this case, it was found that Trautman had been engaging in sexual conversations with his older half-sister and had videos of her under the digital folder "Sexy Sissy," though it was unclear if Trautman had ever had physical sexual contact with his half-sister.

The PSR also noted that there were 10 different victims of Trautman's offenses and that he was found to be in possession of Child Sexually Abusive Material, including 105 images and one video of the various victims. Additionally, Trautman not only posted pictures of the victims online, but at times provided enough information that they could be identified and contacted by others. He invited others on Reddit to engage with him in conversation about sexual harm of his victims. The overall Level of Service/Case Management Inventory placed Trautman in the very high risk category to reoffend. Trautman was also placed in the moderate to high risk range to reoffend on the Vermont Assessment of Sex Offender Risk instrument.

At sentencing, the district court made lengthy comments in evaluating the statutory factors and the information contained in the PSR. The court stated that it had considered Trautman's age, mentality, education, experience, social and cultural background, past criminal record or record of law-abiding contact, motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the offense. The court specifically noted the mitigating factors argued by Trautman, as well as that Trautman had spared his victims from testifying at a trial by entering a plea.

Upon our review of the record, we can find no abuse of discretion in the sentences imposed. See *State v. Hines, supra*. This assignment of error fails.

## CONCLUSION

Trautman's claims of ineffective assistance of trial counsel are either without merit or insufficiently pled and the sentences imposed were not an abuse of discretion. We affirm Trautman's convictions and sentences.

AFFIRMED.