IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ESTELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TYRONE W. ESTELL, APPELLANT.

Filed June 25, 2024.    No. A-23-816.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Angelica W. McClure, of Kotik & McClure Law, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Tyrone W. Estell appeals his plea-based conviction and sentence, entered in the district court for Lancaster County, for one count of second degree assault. Estell asserts that there was prosecutorial misconduct because surveillance video footage of the moments before the assault was allegedly withheld from Estell. Estell also contends that his sentence is excessive. We affirm.

## STATEMENT OF FACTS

On February 8, 2023, Estell was charged by information with one count of second degree assault in violation of Neb. Rev. Stat. § 28-309 (Reissue 2016), a Class IIA felony.

At a hearing on August 17, 2023, the State advised the district court that a plea agreement had been reached whereby Estell would plead to one count of second degree assault in return for the State's agreement not to pursue a habitual criminal enhancement. Estell's trial counsel confirmed the details of the plea agreement and Estell indicated that he wanted to proceed with the

agreement. The district court allowed Estell to withdraw his previously entered guilty plea and he was again arraigned by the State. Estell later pled no contest to second degree assault. The district court advised Estell of the various rights he would be waiving by entering a plea and Estell indicated that he understood the rights that he would be waiving. The court further explained the possible penalties for the Class IIA felony and that the court would not be required to grant him probation.

The State provided the following factual basis to support Estell's plea. On April 25, 2022, Estell was serving a sentence through the Nebraska Department of Correctional Services (NDCS) at the Reception and Treatment Center, located in Lancaster County. On the morning of April 25, a corporal on duty was stacking plastic chairs in preparation for lockdown. Estell took a chair from the corporal's stack, placed it in front of his cell, and sat on it. The corporal directed Estell to return the chair to the stack and report to his cell for lockdown. Estell then approached the corporal and began punching the corporal's head and face with a closed fist. The corporal was able to deploy his "OC spray" on Estell and hold Estell on the ground before additional staff arrived. Photographs were taken of the corporal's injuries and an investigator with NDCS retrieved surveillance video of the assault and observed that the video was consistent with the corporal's initial report.

The district court asked Estell if he had heard what the State believed to be their evidence if the matter proceeded to trial. Estell denied the State's account of the events and that the surveillance video corroborated the corporal's report. Estell claimed that the corporal came into Estell's cell "just to mess with me, and that's when he pulled out his spray." Estell denied that he had posed a threat to the corporal and also stated that the corporal failed to follow procedure by using the spray before calling for backup.

The district court asked Estell whether he wished to enter a plea of no contest or proceed to trial. Estell consulted with his trial counsel off the record.

Back on the record, Estell's trial counsel informed the district court that, after weighing the risks of proceeding to trial, Estell wished to continue with his plea of no contest. Trial counsel also noted that though Estell did not believe all of the facts presented by the State in its factual basis were accurate, Estell would write a letter to share during his allocution at sentencing. Estell affirmed his desire to plead no contest.

The district court found that Estell understood his rights and freely and voluntarily waived them; that he was acting voluntarily; that he fully understood the charge set forth in the information and the consequences of his plea; that his plea was being made freely, voluntarily, knowingly, and intelligently; and that there was a sufficient factual basis for the court to accept the plea. The court accepted the plea and found Estell guilty of second degree assault.

A sentencing hearing was held on September 20, 2023. The district court accepted a surveillance video of the altercation into evidence. The video has no audio but captures Estell getting up from a chair outside of his cell as the corporal walks past and the two speaking briefly. Estell then appears to strike the corporal as the corporal retreats.

Estell's trial counsel did not object to the offered surveillance video but stated that "we tried to reach out to the prison system to see if we could get video of the . . . floor previous to the video that the Court reviewed and weren't able to get that."

Estell stated that he had been sleeping when the corporal came into Estell's cell and took a chair. Estell had no issue with the chair being taken, but asked for his coat that was on the chair.

According to Estell, the corporal then told Estell, "Fuck you, black-ass nigger and slammed my door." This caused Estell to ask for the corporal's supervisor. After asking repeatedly for a supervisor, Estell took a chair and sat in front of his cell, waiting for a supervisor.

Estell further indicated that the corporal then returned to Estell's cell and requested the chair back. When Estell questioned why, the corporal pulled out his mace. Estell saw the corporal's hand rise, but because Estell has a prosthetic left eye, could not fully see what was happening. Estell admits that he did grab the corporal and pushed him back, and that the two ended up "tussling" into a shower where Estell was sprayed. Estell acknowledged that he contributed to the altercation but noted that there had been similar situations with the same corporal.

Following the allocution and arguments by counsel, the district court sentenced Estell to a term of 5 to 10 years' incarceration with 37 days credit for time served.

Estell appeals.

## ASSIGNMENTS OF ERROR

Estell assigns that (1) the prosecutor committed misconduct by withholding surveillance video of the events leading up to the assault; and (2) the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, we will review the record only for plain error. *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022). An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hines*, 313 Neb. 685, 985 N.W.2d 625 (2023).

## ANALYSIS

*Prosecutorial Misconduct.*

Estell first asserts that the prosecutor engaged in misconduct by failing to turn over the surveillance video of the events leading up to the altercation between Estell and the corporal. He argues that the video would have provided more context to the factual basis presented to the district court.

Estell was convicted based upon his plea of no contest to the charge of second degree assault. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Thus, Estell's plea waived any claim of prosecutorial misconduct.

Additionally, we note that Estell has conceded in his brief on appeal that he did not preserve a claim of prosecutorial misconduct for direct appeal. When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, an appellate court will review the record only for plain error. *State v. Cooke*, 311 Neb. 511, 973 N.W.2d 658 (2022). An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from

the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*.

There is nothing in our record to suggest that the prosecutor was in possession of additional surveillance videos and failed to provide them to Estell. At the sentencing hearing, Estell's trial counsel only noted that he had contacted NDCS to request additional surveillance videos and that Estell and his counsel "weren't able to get that." Additionally, Estell was able to provide his version of events to the district court during his allocution at sentencing. We find no plain error with respect to this assignment of error.

*Excessive Sentence.*

Estell assigns that his sentence is excessive and amounts to an abuse of discretion by the district court. Estell argues that the district court did not consider various mitigating circumstances, including the behavior of the corporal, the corporal's minimal injuries, and that, in response to the assault, Estell had been moved to restrictive housing for at least 8 months and lost 90 days' good time.

Estell's sentence is within the relevant statutory limits. Estell was convicted of second degree assault, a Class IIA felony. A Class IIA felony is punishable by a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum Supp. 2022).

There is no evidence that the district court failed to consider the well-established factors and applicable legal principles in its sentencing decision. As noted by the Nebraska Supreme Court, these factors and principles have been repeated so often as to not require citation. See *State v. Applehans*, 314 Neb. 653, 992 N.W.2d 464 (2023).

However, for the sake of completeness we note that the 300-page presentence investigation report (PSR) prepared in this case indicates that Estell was 52 at the time of sentencing and had a high school education. His lengthy criminal history from 1988 to 2016 includes operating a motor vehicle while suspended (seven times); possession of marijuana (twice); shoplifting (five times); theft by unlawful taking; second degree forgery (six times); criminal trespass (twice); disturbing the peace (five times); assault, strike or cause bodily injury (twice); assault and battery (twice); violation of protection order; third degree assault on an officer; and robbery. The overall Level of Service/Case Management Inventory placed Estell in the very high risk category to reoffend.

A statement from Estell, consistent with his allocution at sentencing, appears in the PSR. Estell's statement details the events preceding the assault as well as the particular racial epithet allegedly used by the corporal. Though Estell also expressed remorse for the assault, he did report during his PSR interview that the corporal in this case was "constantly harassing him" and that the corporal had filed numerous misconduct reports against Estell since 2019. Estell's period in restrictive housing and loss of good time is also referenced in the PSR.

At the sentencing hearing, the district court stated that it had reviewed the entirety of the PSR and had considered all statutory factors in determining the appropriate sentence. Additionally, the court explicitly stated to Estell, "I don't for one moment approve of the type of language, if that was what was used by that officer. You're right, it's deplorable and it's not acceptable and it shouldn't happen. But the way you handled it isn't the right way to handle it either." The court noted that a lesser sentence would depreciate the seriousness of the crimes and promote disrespect for the law.

We find no abuse of discretion in the sentence imposed. See *State v. Hines*, 313 Neb. 685, 985 N.W.2d 625 (2023).

CONCLUSION

For the reasons set forth above, we affirm Estell's plea-based conviction and sentence for second degree assault.

AFFIRMED.